UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

J&J SPORTS PRODUCTIONS, INC.      )
    Plaintiff,                    )
                                   )
                                   )
        v.                        )   Civil Action No. 1:11cv459
                                   )
GREAT LATIN RESTAURANTS, L.C.,    )
    Defendant.                     )
                                   )

REPORT AND RECOMMENDATION

This matter comes before the Court pursuant to the August

1, 2011 Order from the Honorable Anthony J. Trenga (Dkt. 6) and

the Motion for Default Judgment (Dkt. 10) by plaintiff J&J

Sports Productions, Inc. ("plaintiff") against defendant Great

Latin Restaurants, L.C., doing business as "Cerro Grande"

("defendant").[1]  When no representative for defendant appeared at

the hearing on this motion, the undersigned Magistrate Judge

took the matter under advisement.  Upon consideration of the

Complaint (Dkt. 1), plaintiff's Motion for Default Judgment, and

the supporting affidavits, the undersigned Magistrate Judge

recommends that default judgment be entered against defendant.

I.   INTRODUCTION

Plaintiff filed this action against defendant on April 28,

2011 to recover damages for the unauthorized viewing of the May

---

[1] Plaintiff named a John Doe defendant in the Complaint but does
not seek default judgment against this defendant.

2, 2009 closed-circuit telecast of "The Battle of East and West: Manny Pacquiao v. Ricky Hatton, IBO Light Welterweight Championship Fight Program" ("the Event").  (Dkt. 1.)  The Complaint alleges violations of Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605.  (Compl. ¶ 1.)  47 U.S.C. § 553 grants relief for unauthorized reception of cable services, while 47 U.S.C. § 605 affords a remedy for unauthorized publication or use of communications.  47 U.S.C. § 553(a)(1); 47 U.S.C. § 605(a).  Plaintiff alleges that defendant unlawfully intercepted and exhibited the closed-circuit telecast of the Event, for which plaintiff was an exclusive commercial distributor.  (Compl. ¶¶ 6-8, 13-17.)  Plaintiff thus moved for default judgment and now requests the Court to award plaintiff statutory damages, willfulness damages, and attorney's fees and costs.  (Mem. Supp. Mot. Default J. 4.)

### A.  Jurisdiction and Venue

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  The court must have both subject matter and personal jurisdiction over a defaulting party before it can render default judgment.

Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction

over the subject matter of this dispute, which arises under

Section 705 of the Communications Act of 1934, as amended, 47

U.S.C. §§ 553 and 605.

Personal jurisdiction is proper because defendant is a

business entity incorporated in the Commonwealth of Virginia

whose principal place of business is at 6705 Springfield Mall,

Springfield, Virginia 22150.  (Compl. ¶ 5; Mem. Supp. Mot.

Default J. 1.)  Venue in this District is proper under 28 U.S.C.

1391 because plaintiff's claims arose in this District.  (Compl.

¶ 3.)

### B.    Service of Process

On May 23, 2011, plaintiff served Douglas E. McKinley,

registered agent of defendant, with a copy of the Complaint and

Summons by private process server.  (Dkt. 5; Mem. Supp. Mot.

Default J. 1-2.)  Service was therefore proper under Virginia

Code 8.01-299(1) and Federal Rule of Civil Procedure 4(e).

### C.    Grounds for Default Judgment

Defendant has not appeared, answered, or otherwise filed

any responsive pleadings in this matter.  The Clerk of this

Court entered default as to defendant on August 2, 2011.  (Dkt.

8.)  Plaintiff filed a Motion for Default Judgment on August 10,

2011.  (Dkt. 10.)  No representative for defendant appeared at

the August 26, 2011 hearing on plaintiff's motion.  (Dkt. 16.)

The Complaint sets forth a claim for unauthorized reception

of cable service under 47 U.S.C. § 553(a)(1).  (Compl. ¶¶ 18-
24.)  Plaintiff is suing as a "person aggrieved" by a violation
of Section 553, which provides that "[n]o person shall intercept
or receive or assist in intercepting or receiving any
communications service offered over a cable system, unless
specifically authorized to do so by a cable operator or as may
otherwise be specifically authorized by law."  47 U.S.C. §§
553(a)(1), 553(c)(1).

The Complaint also sets forth a claim for unauthorized
publication or use of radio and satellite communications under
47 U.S.C. § 605(a).  (Compl. ¶¶ 25-32.)  Plaintiff is suing as a
"person aggrieved" by a violation of Section 605, which defines
a "person aggrieved" as "any person with proprietary rights in
the intercepted communication."  47 U.S.C. § 605(d)(6).  Section
605 provides that

> [n]o person not being authorized by the sender shall
> intercept any radio communication and divulge or publish
> the … contents … of such intercepted communication to any
> person.  No person not being entitled thereto shall receive
> or assist in receiving any interstate … communication by
> radio and use such communication … for his own benefit or
> for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).  When programming is transmitted or
intercepted over both cable and satellite mediums, both Sections
553 and 605 apply.  *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d
123, 130-33 (2d Cir. 1996) (noting that Section 553 "applies to
any transmissions via cable, whether or not they originate as

radio transmissions" and that Section 605 applies to "the

interception of cable-borne, as well as over-the-air"

broadcasts).

Plaintiff's well-pleaded Complaint establishes that

defendant intercepted and/or received, without authorization,

the interstate communication of plaintiff's event and then

divulged such communication to patrons of the Cerro Grande

restaurant.  (Compl. ¶¶ 13-15.)  Plaintiff has also established

that the closed-circuit broadcast cannot be intercepted

innocently or accidentally.  (Gagliardi Aff. ¶ 9.)  Given that

the factual allegations alleged in the Complaint are deemed

admitted by virtue of defendant's default, the undersigned

recommends a finding that plaintiff has established claims for

the unauthorized reception of cable and satellite service

against defendant.

## II.  FINDINGS OF FACT

Upon a full review of the pleadings, the undersigned

Magistrate Judge finds that plaintiff has established the

following facts.[2]

---

[2] The pleadings include the Complaint (Dkt. 1) ("Compl.),
plaintiff's Motion for Default Judgment (Dkt. 10) ("Mot. Default
J."), plaintiff's Memorandum in Support of Default Judgment
(Dkt. 11) ("Mem. Supp. Mot. Default J."), Plaintiff's Affidavit
in Support of Plaintiff's Motion for Default Judgment (Dkt. 13)
("Gagliardi Aff."), the Declaration of M. Scott Bucci (Dkt. 14)
("Bucci Decl."), and the Affidavit of Yuri Mortataya (Dkt.
17)("Mortataya Aff.").

Plaintiff is a corporation organized under the laws of California, with a principal place of business of Campbell, California.  (Compl. ¶ 4.)  Plaintiff is a distributor of sports and entertainment programming who paid substantial fees to enter into a closed-circuit television license agreement ("the License Agreement") to exhibit the May 2, 2009 telecast of "The Battle of East and West: Manny Pacquiao v. Ricky Hatton, IBO Light Welterweight Championship Fight Program" ("the Event").  (Compl. ¶ 6; Gagliardi Aff. ¶ 3.)  Through its License Agreement, plaintiff acquired the right to distribute the Event in Virginia.  (Compl. ¶¶ 7-8.)

Therefore, any business in Virginia seeking to show the Event was required to pay Plaintiff for the rights to broadcast the Event.  (Id.)  The transmission of the Event was electronically coded and had to be decoded with electronic equipment in order for a proper signal to be received and televised by the establishment.  (Compl. ¶ 10; Gagliardi Aff. ¶ 9.)  This capability to decipher the code and/or receive appropriate satellite coordinates for televising the Event was available for purchase once an establishment contracted with plaintiff.  (Compl. ¶ 11; Gagliardi Aff. ¶ 8.)

On May 2, 2009, during the broadcast of the Event, Yuri Mortataya, an investigator working for the United States Enforcement Bureau, entered defendant's establishment.

6

(Mortataya Aff. 1-2.)  She noticed that defendant's

establishment was exhibiting the match without plaintiff's

permission.  (Id.)  Mortataya counted the number of people in

the establishment, which has a maximum occupancy capacity of

approximately 400 patrons, and submitted an affidavit based on

her findings.  (Id. at 2.)  She counted, on three separate

occasions, approximately 300, 250, and 350 patrons in

defendant's establishment.  (Id.)

Based on her investigation, Mortataya concluded that

defendant intercepted and/or received the interstate

communication of the Event, and enabled patrons to view the

Event without a license from plaintiff.  (Id. at 1.)  Therefore,

plaintiff claims that defendant avoided lawful payment to its

company by misappropriating plaintiff's licensed exhibition of

the Event while infringing upon plaintiff's exclusive rights.

(Compl. ¶¶ 13-17; Mem. Supp. Mot. Default J. 2.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

#### A.   Relief Sought

Plaintiff alleges that this case concerns the pilfering and

re-transmission of a pay-per-view event.  (Mem. Supp. Mot.

Default J. 2.)  Defendant purportedly intercepted, received,

published, divulged, displayed, and/or exhibited the Event for

purposes of direct or indirect commercial advantage, in

violation of Section 705 of the Communications Act of 1934, as

amended, 47 U.S.C. §§ 553 and 605.  Thus, plaintiff moves this
Court to enter an Order of Default Judgment against defendant as
well as award the following amounts in damages: $10,000 in
statutory damages; enhanced statutory damages due to
willfulness; and reasonable attorney's fees and costs in the
amount of $3,063.46.  (Mem. Supp. Mot. Default J. 4.)

In support of the claim for damages, plaintiff submitted
the Gagliardi Affidavit and the Bucci Declaration.  Although
plaintiff has set forth the elements of liability under both
Sections 553 and 605, courts have held that recovery under both
sections is improper.  *See Kingvision Pay-Per-View, Ltd. v.*
*Gutierrez*, 544 F. Supp. 2d 1179, 1184 (D. Co. 2008); *Time Warner*
*Cable of New York City v. Sanchez*, 2003 WL 21744089, *3
(S.D.N.Y. July 8, 2003).  Plaintiff's Motion for Default
Judgment does not seek a double recovery, but it does not make
clear under which section plaintiff seeks statutory damages.
(Mem. Supp. Mot. Default J. 4.).  The undersigned will evaluate
plaintiff's claim for statutory damages under Section 605 as it
provides for a higher potential damage award.  *See Sykes*, 75
F.3d at 127.

As a "person aggrieved" by a violation of Section 605,
plaintiff may be granted injunctive relief and/or damages, and
must be granted reasonable attorneys' fees and costs.  47 U.S.C.
§ 605(e)(3)(B)(i)-(iii).  The Court may award either actual

damages suffered as a result of a violation of Section 605, as well as any profits attributable to the violation, or statutory damages of not less than $1,000.00 and not more than $10,000.00. 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II).

Plaintiff's Complaint sought statutory damages in the amount of $10,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), additional damages for willfulness in the amount of $100,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), and full costs and expenses, including reasonable attorney's fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). (Compl. ¶ 32.) In moving for a default judgment, plaintiff seeks statutory damages in the amount of $10,000.00, additional damages for willfulness at the Court's discretion, and attorney's fees and costs in the amount of $3,063.46. (Mem. Supp. Mot. Default J. 4; Bucci Decl. ¶ 13.)

### B.   Statutory Damages

Plaintiff now seeks statutory damages in the amount of $10,000.00. Courts have employed two general approaches to calculating statutory damages: either by basing the damages calculation on the number of patrons in an establishment during the unauthorized broadcast, or by utilizing a flat damage amount. *See Joe Hand Promotions, Inc. v. Bougie, Inc.,* 2010 WL 1790973, *5 (E.D. Va. April 12, 2010) (multiplying the number of customers present by a reasonable rate of $100.00 per customer);

*Joe Hand Promotions, Inc. v. Jimmagan's Inlet, Inc.*, 2010 WL 5141768, *5 (D.S.C. Oct. 1, 2010) (awarding five times the license fee for the program); *Gutierrez*, 544 F. Supp. 2d at 1184 (awarding a flat amount of $5,000.00).

This Court has followed both approaches to calculating damages in varying factual scenarios. In *Joe Hand Promotions*, only ten patrons were present for the unlicensed broadcast of a pay-per-view event. 2010 WL 1790973, at *5. This Court awarded $1,000.00 in statutory damages by multiplying the number of customers present by a reasonable rate of $100.00 per customer. *Id.* In another case, where only five to seven patrons were present for the viewing of a single soccer game in an eight-game package, the Court felt that an award per customer would not provide sufficient deterrence, and instead granted a flat award of $5,000. *J&J Sports Prods., Inc. v. Maria, Inc.*, et al., No. 10-1002, slip op. at 12 (E.D. Va. April 1, 2011).

The undersigned finds that a flat award of statutory damages of $10,000 is appropriate in this case and not excessive given the high number of patrons present.

Although seeking an award of statutory damages, plaintiff alleges that the actual damages incurred when defendants stole and re-transmitted the Event were $3,200, the amount of the unpaid sub-license fee based on the maximum patronage of the restaurant. (Gagliardi Aff. ¶ 8.) Exhibit 1 to the Gagliardi

Affidavit shows a price of $3,200.00 for license of the Event for bars or restaurants with an occupancy capacity between 301 and 400 persons. (Dkt. 13.) However, plaintiff urges the Court to instead award statutory damages of $10,000 to deter further signal piracy. (Mem. Supp. Mot. Default J. 4; Gagliardi Aff. ¶¶ 10-13.)

Plaintiff has demonstrated that defendant's restaurant has a capacity of 400 persons, and that between 250 and 350 patrons were present during the display of the Event. (Mortataya Aff.) It thus appears that defendant's establishment was near capacity during the unlawful telecast of the Event. Given this high number, the undersigned finds that a flat rate of the maximum statutory damages of $10,000 is appropriate to deter future unlawful conduct.

### C. "Enhanced" Statutory Damages

If the Court finds that the violation was willful and for "purposes of direct or indirect commercial advantage or private financial gain" the Court may increase the amount of actual or statutory damages by an amount of not more than $100,000.00. 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff's Complaint sought enhanced damages for willfulness in the amount of $100,000.00. In moving for a default judgment, however, plaintiff expressly leaves the amount of enhanced damages to the Court's discretion.

Courts have evaluated whether enhanced damages are

11

appropriate by assessing factors such as "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks." *Kingvision Pay-Per-View Ltd. v. Villalobos*, 554 F. Supp. 2d 375, 383 (E.D.N.Y. 2008).

Plaintiff argues that signal piracy is per se intentional because it cannot occur without the willful and intentional modification of electronic equipment, the removal of devices designed to prevent unauthorized exhibition, or other willful acts. (Gagliardi Aff. ¶¶ 9, 13.)  Plaintiff states that it has lost several millions of dollars due to signal piracy, and the widespread nature of the piracy problem has resulted in higher costs of services to lawful commercial and residential cable and satellite consumers. (Gagliardi Aff. ¶ 11.)  Plaintiff urges the Court to consider enhanced damages as a means of deterring future illegal acts and combatting the "widespread piracy problem." (Mem. Supp. Mot. Default J. 3-4.)

Defendant's violation of Section 605, taking place in a commercial establishment rather than a residence, was committed for purposes of direct or indirect commercial advantage. The pleadings make clear that such interception cannot be done accidentally or innocently. An award of some enhanced damages

is therefore appropriate as a deterrent.

The evidence before the Court shows that defendant may have reaped more than a nominal gain from the unauthorized broadcast. There were between 250 and 350 patrons in defendant's establishment at the time of the unauthorized broadcast.  This is close to the establishment's maximum capacity of 400 patrons. Plaintiff has not provided any evidence of repeated violations, nor has plaintiff shown that defendant advertised the unauthorized broadcast.  Further, plaintiff's investigator did not pay a cover charge to enter defendant's establishment and there is no evidence that defendant charged a premium for food or drink.

However, the maximum amount of $100,000.00 divided by an average of 300 patrons would result in damages of approximately $333 per patron.  Although that is surely more than each patron would have spent at the defendant's establishment, the undersigned finds that such a multiple of defendant's profits is appropriate to deter the level of unlawful conduct present in this case.

The undersigned finds that defendant's actions were taken willfully and for direct or indirect commercial advantage and that plaintiff is thus entitled to enhanced damages in the amount of $100,000.00.  The combination of $10,000.00 in statutory damages and $110,000.00 in enhanced damages both

compensates plaintiff and serves as a deterrent to future signal piracy by defendant and others.

### D.    Attorney's Fees and Costs

Plaintiff seeks to recover attorney's fees in the amount of $2,651.00 and costs in the amount of $412.46.  (Bucci Decl. ¶¶ 12-13).  In support of this request, plaintiff submits the Declaration of M. Scott Bucci (Dkt. 14) detailing the work done, hours expended, and the total amount due.

Mr. Bucci declares that his firm expended a total of 7.7 hours of attorney time at rates of $250 per hour for Mr. Bucci's time and $160 per hour for the time of Mr. Clinton Verity, Mr. Matthew Beyrau, and Ms. Erin Maruskin.  (Id. at 6-9.)  The work completed in these hours includes, *inter alia*, drafting pleadings filed with the Court and correspondence with the client.  (Id.)  Mr. Bucci further declares that he anticipates expending an additional 6 hours of work preparing for and traveling to the hearing on the Motion for Default Judgment. (Id. ¶ 13.)

Mr. Bucci also declares that his firm expended a total of 3.2 hours of paralegal time at the rate of $90 per hour, reflecting, *inter alia*, correspondence with the private process server and with the Clerk of Court.  (Id. at 6-9.)

Plaintiff also seeks $412.46 in costs representing the $350.00 filing fee, $44.00 in service of process fees, $17.82 in

delivery and messenger fees, and $0.64 in postage.  (Id. at 9.)

The undersigned finds that the requested fees and costs are reasonable compensation for the time expended to vindicate plaintiff's rights and recommends an award of $3,063.46.

## IV.  RECOMMENDATION

The undersigned Magistrate Judge recommends entry of judgment in the amount of **$113,063.46** in favor of plaintiff against defendant Great Latin Restaurants.  Specifically, the undersigned recommends an award of $10,000.00 in statutory damages, $100,000.00 in enhanced damages, and attorney's fees and costs in the amount of $3,063.46.

## V.  NOTICE

The parties are advised that exceptions to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to defendant at the following address:

```
Douglas E. McKinley
Registered Agent for Great Latin Restaurants, L.C.
100 North Pitt Street, Suite 200
Alexandria, Virginia 22314

and

Douglas E. McKinley
Registered Agent for Great Latin Restaurants, L.C.
12701 Marthas Road
Alexandria, Virginia 22307
```

                                        /s/
                              _____
                              THERESA CARROLL BUCHANAN
                              UNITED STATES MAGISTRATE JUDGE

```
September 15, 2011
Alexandria, Virginia
```